IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEJON PITCHFORD,      :
  Plaintiff       :   No. 1:25-cv-02423
            :
  v.        :   (Judge Kane)
            :
LT. ACKLEY, et al.,     :
  Defendants     :

**MEMORANDUM**

Currently before the Court are pro se Plaintiff Dejon Pitchford ("Pitchford")'s application for leave to proceed in forma pauperis ("IFP Application"), complaint, and motion for an extension of time. For the reasons set forth below, the Court will grant the IFP Application, deny the motion for an extension of time, and dismiss the complaint with prejudice.

I.  **BACKGROUND**

Pitchford commenced this action by filing a complaint and a motion to appoint counsel, both of which the Clerk of Court docketed on December 15, 2025. (Doc. Nos. 1, 2.)[1] When he filed his complaint, Pitchford neither applied for leave to proceed in forma pauperis nor remitted the filing fee; as such, an Administrative Order issued requiring him to either pay the fee or seek leave to proceed in forma pauperis. (Doc. No. 4.) Pitchford timely submitted his IFP Application which was docketed on January 21, 2026. (Doc. No. 7.) His certified prisoner trust fund account statement was docketed on February 27, 2026. (Doc. No. 12.)

In his complaint, Pitchford names as Defendants the following individuals who were allegedly employed at United States Penitentiary Allenwood ("USP Allenwood") while he was incarcerated there in August 2025: (1) Lt. Ackley ("Ackley"); (2) Lt. Cain ("Cain"); (3) Lt.

---

[1] On December 16, 2025, the Court denied Pitchford's motion to appoint counsel as premature. (Doc. No. 5.)

Kubie ("Kubie"); (4) Lt. Fry ("Fry"); (5) Lt. Packer ("Packer"); (6) Lt. Huzen ("Huzen"); (7) J. Yarnell ("Yarnell"); (8) S. Johns ("Johns"); (9) Correctional Officers Myers ("CO Myers"), Pensyl ("CO Pensyl"), and Stout ("CO Stout"); and (10) Unknown Correctional Officers ("Unknown COs"). (Doc. No. 1 at 1.) He alleges that from approximately August 28, 2025, until August 30, 2025, he was "maliciously tortured, assaulted, caused wanton pain and brutalized by [Federal Bureau of Prisons ("BOP")] lieutenants, corrections officers (C/O's) and medical staff . . . while [he] was incarcerated[ at [USP Allenwood]." See (id.).

The events at issue began on August 28, 2025, at approximately 7:00 p.m., when Kubie sprayed Pitchford with OC spray for approximately twenty to thirty seconds, even though Pitchford had not done anything to get sprayed, and the BOP's use-of-force policy allowed OC spray to be deployed for only two seconds on an inmate. See (id. at 1–2). While using the OC spray, Kubie "used profanities," which Pitchford believes shows that Kubie wanted to "cause [him] pain." See (id. at 2). The OC spray caused Pitchford to choke, become dizzy, and experience burning on his skin, mouth, and eyes. See (id.).

At some point thereafter, an "unknown black Lt." asked Pitchford whether he had ever been in chains. See (id.). Pitchford responded that he had been in chains, which prompted this unknown lieutenant to "devious[ly] smile" at him and point out that he had not ever been in chains at USP Allenwood. See (id.). Pitchford was then moved to a cell in health services and placed on suicide watch even though he was not suicidal and had not engaged in self-harm. See (id.). Pitchford alleges that the "camera was "removed from the vicinity" and, once it was removed, "they began to beat [him], punch[ him, and use] objects to cause [him] pain." See (id.).

On August 29, 2025, at approximately 6:00 a.m., Cain and several unknown correctional officers began attacking Pitchford while he was in "full restraints," i.e., "cuffs, shackles, and body chains." See (id. at 2, 4). Due to the restraints, Pitchford was unable to lift his hands to defend himself while Cain repeatedly punched him with a closed fist in his face, torso and stomach, and "the other [correctional officers] helped." See (id. at 2). Pitchford's restraints were so tight that they "instantly caused excruciating pain on both [his] wrists and legs." See (id.). Cain also "tightened the shackles every time he came in[to the room]." See (id.).

Pitchford appears to allege that Ackley was also in the room, and he yelled, "Boy[,] remember Lewisburg, we are gonna [sic] make life hell for you, so admit you assaulted one of my officers, you're gonna [sic] be in [the Special Management Unit] for a long time." See (id. at 3). Ackley then issued Pitchford an incident report in which he falsely claimed that Pitchford assaulted CO Pensyl. See (id.). Pitchford claims that the incident report was used to "cover up their torture and abuse," and he asserts that a non-Defendant correctional officer was a "witness to this." See (id.).

At approximately noon on the same date, Fry, Cain, and Unknown COs placed a riot shield on top of Pitchford while he was "totally naked." See (id.). They smashed the riot shield onto Pitchford's groin. See (id.). The riot shield had OC spray on it, and the spray burned Pitchford's skin and testicles. See (id.). Pitchford cried out in pain, and these correctional officials "laughed at [Pitchford's] cries." See (id.). Fry also had "gas or gas residue on his gloves" and "thumped" Pitchford's testicles under the shield, causing his testicles to burn. See (id.). Fry asked Pitchford how it felt, and Pitchford told him that it burned. See (id.). Fry also pinched the head of Pitchford's penis, "while twisting and pulling it," and the other correctional

officers "dealt . . . blows to [Pitchford's] body."  See (id.).  Cain then threw "dirty foul toilet water" on Pitchford's torso and face.  See (id.).

Pitchford also alleges that from August 28, 2025, through August 30, 2025, he was denied all food and water.  See (id.).  Pitchford asserts that the correctional officer who gave him his first meal "is a witness to this abuse."  See (id. at 4).

Pitchford asked "the captain, warden, and sis [sic]" to investigate what occurred and take photographs of his injuries, which included burns on his genitals and a "plethora of bruises and wounds."  See (id.).  However, no one from the BOP ever interviewed him or his witnesses, and they did not document his injuries.  See (id.).  Pitchford was also denied proper medical and psychological treatment for his injuries and the trauma he suffered.  See (id.).

Pitchford asserts that there is a "culture of abuse" at USP Allenwood's Special Housing Unit, and correctional officers have assaulted at least twenty-eight other inmates on Pitchford's "range" over the past few months.  See (id.).  Pitchford also alleges that he has filed grievances which resulted in prison officials retaliating against him by threatening him and denying him clothing, food, and cleaning supplies.  See (id.).

Based on these factual allegations, Pitchford appears to assert the following claims for violations of his rights under the United States Constitution: (1) Eighth Amendment excessive force claims against Ackley, Fry, Cain, Hazen, Packer, "an unknown black LT [sic]," CO Pensyl, CO Stout, CO Myers, and Johns, see (id. at 5–7); (2) an Eighth Amendment sexual assault claim against Fry, see (id. at 7); (3) Eighth Amendment unlawful conditions-of-confinement claims, see (id. at 8); (4) Fifth Amendment due process claims relating to the issuance of "false" incident reports and imposition of disciplinary sanctions, see (id. at 7–8); and (5) a First Amendment

4

retaliation claim, see (id. at 9).[2]  For relief, Pitchford seeks "$500,000.00 [on] each claim."  See

(id.).

## II.    LEGAL STANDARDS

### A.    Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case

"without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that

includes a statement of all assets such prisoner possesses that the person is unable to pay such

fees or give security therefor."  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts."  Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris v. Middletown Twp., 293 F. App'x 130, 131–32 (3d Cir. 2008) (unpublished)

(footnote omitted).

---

[2]  The Court groups Pitchford's seven claims into five claims due to the overlapping nature of his claims, see (id. at 5–9); nevertheless, the Court construes his due process and retaliation claims as arising under the Fifth Amendment and First Amendment, respectively, because such claims do not arise under the Eighth Amendment.  See, e.g., Nieto v. Godinez, No. 16-cv-00761, 2016 WL 4540894, at *3 (S.D. Ill. Aug. 31, 2016) ("As to the Eighth Amendment, there is no cause of action for Eighth Amendment retaliation per se, although an inmate may bring claims based, for example, on excessive force or unconstitutional conditions of confinement, among other claims.").

**B.    The Court's Screening of Complaints Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a).  If a complaint is frivolous or fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . is frivolous . . . [or] fails to state a claim on which relief may be granted . . . .").

A complaint is frivolous under Sections 1915A(b)(1) and 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact."  See Neitzke, 490 U.S. at 325.  In addition, when reviewing whether a plaintiff has failed to state a claim upon which relief may be granted under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening of a complaint under Sections 1915A and 1915(e)(2).  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However,

7

pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

## III.    DISCUSSION

### A.    The IFP Application

After reviewing the IFP Application and Pitchford's prisoner trust fund account statement, it appears that he is unable to pre-pay the costs of this civil action.  Therefore, the Court will grant the IFP Application and allow Pitchford to proceed in forma pauperis in this case.[3]

### B.    Pitchford's Motion for Extension of Time

Pitchford filed a motion in which he seeks an extension of time due to his placement in administrative segregation.  (Doc. No. 6 at 1.)  The Court will deny this motion because (1) Pitchford does not identify the deadline for which he is seeking an extension of time and (2) as far as the Court can discern from the docket in this case, Pitchford does not require an extension of time to file any document necessary for the Court to consider his request to proceed in forma pauperis or screen his complaint.

### C.    Screening of Pitchford's Complaint

The Court construes Pitchford's complaint as containing First, Fifth, and Eighth Amendment claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Defendants, all of whom are alleged to be federal officials.  Bivens "provides for private rights of action against federal officials for certain

---

[3]  However, because Pitchford is a prisoner, he is advised that he will be obligated to pay the filing fees for this case in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of the outcome.  See 28 U.S.C. § 1915(b).

constitutional violations." See Bryan v. United States, 913 F.3d 356, 358 n.1 (3d Cir. 2019); see also Muniz v. United States, 149 F.4th 256, 260 (3d Cir. 2025) (describing "[t]he Bivens doctrine" as "the ability of the Court to imply a damages cause of action [against federal officers] for a constitutional wrong . . . ."); Murphy v. Bloom, 443 F. App'x 668, 669 n.1 (3d Cir. 2011) (unpublished) ("Bivens recognized a private cause of action to recover damages against federal actors for constitutional violations, similar to the cause of action against state actors provided by 42 U.S.C. § 1983."). The Third Circuit Court of Appeals has described the Bivens doctrine as follows:

> In certain circumstances, the Constitution affords a cause of action for damages against individual federal officers to redress violations of constitutional rights. Bivens, 403 U.S. at 397, 91 S.Ct. 1999. "In the case giving the doctrine its name, the Supreme Court held there is a cause of action for damages when a federal agent, acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment." [Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021)] (citing Bivens, 403 U.S. at 389, 397, 91 S.Ct. 1999). In the decade following Bivens, the Supreme Court recognized two additional causes of action under the Constitution: first, for a congressional staffer's gender discrimination claim under the Fifth Amendment, see Davis v. Passman, 442 U.S. 228, 244, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, see [Carlson v. Green, 446 U.S. 14, 19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); Egbert v. Boule, 596 U.S. 482, 490–91, 142 S.Ct. 1793, 213 L.Ed.2d 54 (2022)].
>
> Since then, the Supreme Court has "consistently refused to extend Bivens liability to any new context or new category of defendants," Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001), and "has not implied additional causes of action under the Constitution," Egbert, 596 U.S. at 491, 142 S.Ct. 1793. Instead, in recognition that separation of powers principles are central to the analysis, the Court has "made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." [Ziglar v. Abbasi, 582 U.S. 120, 135, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017)] (quoting Iqbal, 556 U.S. at 675, 129 S.Ct. 1937). At bottom, the "question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" Id. (quoting Bush v. Lucas, 462 U.S. 367, 380, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)). "The answer most often will be Congress," id., as the "Judiciary's authority to do so at all is, at best, uncertain," Egbert, 596 U.S. at 491, 142 S.Ct. 1793. The Constitution entrusts the legislature—not the courts—with the power to fashion new causes of action. And "it is a significant step under separation-of-powers principles for a court to determine that

9

it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." Abbasi, 582 U.S. at 133, 137 S.Ct. 1843.  Therefore, when considering whether to recognize a new implied cause of action for damages under a constitutional provision, "our watchword is caution." [Hernandez v. Mesa, 589 U.S. 93, 101, 140 S.Ct. 735, 206 L.Ed.2d 29 (2020)].

See Kalu v. Spaulding, 113 F.4th 311, 325–26 (3d Cir. 2024).

The Third Circuit has also described the Supreme Court's relevant analysis for this Court

to consider when evaluating the viability of a plaintiff's Bivens claim as follows:

"[T]he Supreme Court has set forth a two-step inquiry to determine the availability of Bivens remedies in a particular case."  Kalu, 113 F.4th at 326.  "First, we ask whether the case presents a new Bivens context—i.e., whether the case is different in a meaningful way from previous Bivens cases decided by the Supreme Court." Id. (cleaned up).  There are only three such cases: Bivens[, Davis, and Carlson.]  "If a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available."  Kalu, 113 F.4th at 326 (quotation omitted).

"[I]f the case presents a new context, we proceed to the second step of the inquiry and ask whether there are 'special factors counselling hesitation' in extending Bivens."  Id. (quoting Abbasi, 582 U.S. at 136, 137 S.Ct. 1843).  We decline to infer a cause of action when these factors "indicat[e] that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  Goldey v. Fields, 606 U.S. 942, 145 S. Ct. 2613, 2615, 222 L.Ed.2d 1006 (2025) (quotation omitted).

But, in Egbert v. Boule, the Supreme Court clarified that "a new context arises" even under the first step when "potential special factors that previous Bivens cases did not consider" are presented and those factors "counsel hesitation"—extending a step-two-like special factors analysis to the first step.  596 U.S. at 492–93, 142 S.Ct. 1793 (cleaned up).  There, the Court declined to extend Bivens in a case where a "federal law enforcement officer violated the Fourth Amendment in searching the curtilage of [an individual's] home," much like in Bivens, on the grounds that search in Egbert was proximate to the border, raising immigration and national security concerns as special factors not previously considered in Bivens.  Id. at 503, 142 S.Ct. 1793 (Gorsuch, J., concurring); see id. at 495–96, 142 S.Ct. 1793 (majority opinion).  In holding a Bivens remedy is unavailable in cases which "present 'almost parallel circumstances' or a similar 'mechanism of injury'" to an existing context, id. at 495, 142 S.Ct. 1793 (citation omitted), the Court explained "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," id. at 492, 142 S.Ct. 1793.

10

> "Egbert tightened the [pre-existing] Ziglar test and, in doing so, made a strong statement that lower courts should not extend Bivens beyond the contexts recognized in Bivens, Davis, and Carlson." Fisher v. Hollingsworth, 115 F.4th 197, 204 (3d Cir. 2024).

See Muniz, 149 F.4th at 261 (all alterations other than first alteration in original).

Here, and as stated above, Pitchford alleges that he was subjected to several Eighth Amendment violations due to Defendants' use of excessive force, Fry's sexual assault, and Pitchford's unconstitutional conditions of confinement, Fifth Amendment due process violations based on Ackley's issuance of an incident report and the imposition of sanctions, and a First Amendment violation for retaliation.  Pitchford's allegations, however, fail to state a claim for relief under Bivens because it has not been extended to any of these types of constitutional claims.  See Goldey, 606 U.S. at 944 (holding that an Eighth Amendment excessive force claim "arises in a new context, and special factors counsel against recognizing an implied Bivens cause of action for Eighth Amendment excessive-force violations"); Kalu, 113 F.4th at 336 (declining to extend Bivens remedies to federal prisoner's conditions-of-confinement, failure-to-protect, and sexual-assault claims); Bistrian v. Levy, 912 F.3d 79, 96 (3d Cir. 2018) (declining to extend Bivens to a federal prisoner's First Amendment retaliation claim and explaining that the decision "aligns with a strong trend in district courts, post-Abassi, holding that a Bivens retaliation claim under the First Amendment should not be recognized"), abrogation on other grounds recognized by Freeman v. Lincalis, 158 F.4th 166, 182 (3d Cir. 2025) (citing Fisher, 115 F.4th at 203–06); Freeman, 158 F.4th at 182 (declining to extend Bivens to federal prisoner's Fifth Amendment due process claim); Dockery v. Baltazar, No. 20-cv-01676, 2021 WL 2014969, at *4 & n.38 (M.D. Pa. May 19, 2021) (declining to extend Bivens to Fifth Amendment due process claim and collecting cases).  In other words, Pitchford's Bivens claims present new contexts insofar as they "do[] not concern an illegal search of his home, [see Bivens, 403 U.S. at 389], sexual

11

discrimination by his employer, [see Davis, 442 U.S. at 235], or the denial of medical care by his jailers, [see Carlson, 446 U.S. at 16]."  See Freeman, 158 F.4th at 181 (footnotes omitted). Additionally, "the availability of the BOP [Administrative Remedy Program ("ARP")] is a 'special factor[]' suggesting that a damages remedy 'risk[s] . . . interfering with the authority of the other branches,'" see Muniz, 149 F.4th at 264 (quoting Hernandez, 589 U.S. at 102), and Pitchford alleges that he used and "fully exhausted" his administrative remedies with the BOP. See (Doc. No. 1 at 1).[4]

####     C.     Leave to Amend

Having determined that Pitchford's claims against Defendants are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint.  Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable

---

[4]  Although he does not expressly identify it among his Eighth Amendment claims, see (id. at 5–9), it is possible that Pitchford also asserts an Eighth Amendment deliberate-indifference-to-serious-medical-needs claim against some or all of Defendants.  See (id. at 4 ("I've been deprived of proper medical treatment for my injuries, nerve damage, [and] PTSD . . . .")).  Even if he intends to assert such a claim, it is also subject to dismissal because both his factual allegations and the availability of the BOP ARP create a new context and the presence of, and Pitchford's use of, the ARP, serves as a "special factor" counseling against extending Bivens here.  See Muniz, 149 F.4th at 263–66.

or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Based on the analysis above, allowing Pitchford leave to amend his Bivens claims would be futile.

## IV.    CONCLUSION

For the reasons discussed above, the Court will grant the IFP Application, deny Pitchford's motion for an extension of time, dismiss Pitchford's complaint with prejudice, and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

13